## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DONALD DAVIS,                           )
                                        )
      Plaintiff,                     )
                                        )
v.                                      )    Civil No. 3:23-cv-40
                                        )    Judge Stephanie L. Haines
NATIONAL HME,                           )
                                        )
      Defendant.                     )

## OPINION

Plaintiff Donald Davis ("Davis") commenced this action on March 7, 2023, filing a three-count Complaint, ECF No. 1, against Defendant National HME ("NHME"). Davis' Complaint was ultimately amended on June 30, 2023. ECF No. 13. Davis alleges the following counts against NHME: Discrimination and Failure to Accommodate under the Americans with Disabilities Act ("ADA") ("Count I"), Retaliation under the ADA ("Count II"), and Wrongful Discharge under Pennsylvania's Workers' Compensation Act ("PWCA"), 77 PA. STAT. AND CONS. STAT. § 1, *et seq.*, ("Count III"). ECF No. 13. In his prayer for relief, Davis also requests punitive damages. ECF No. 13, pp. 4-6. Pending before the Court is NHME's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6), ECF No. 14, and Brief in Support of its Motion to Dismiss, ECF No. 15, wherein NHME requests the Court dismiss Davis' Amended Complaint in its entirety. On August 4, 2023, Davis filed a Brief in Opposition to NHME's Motion to Dismiss, ECF No. 17, and on August 18, 2023, NHME filed a Reply Brief in Support of its Motion to Dismiss. ECF No. 20. This matter is fully briefed and ripe for disposition.

For the reasons set forth below, the Court will GRANT in part and DENY in part NHME's Motion to Dismiss the Amended Complaint. ECF No. 14.

## I.      Factual Background[1]

Davis began working for NHME as a Technician Driver on March 1, 2022.  ECF No. 13, ¶ 6. During his tenure, Davis' duties frequently required lifting heavy equipment and included delivering, setting up, and servicing equipment.  *Id.*, ¶ 7.  While employed at NHME, Davis suffered two work-related injuries—an injury to his lower back which occurred on April 26, 2022, and an injury to his left shoulder which occurred on or about June 2, 2022.  *Id.*, ¶¶ 8-9, 12, 14.  On April 26, 2022, Davis injured his lower back attempting to remove a lift chair from his truck for transfer into a facility.  *Id.*, ¶ 9.  Davis returned to work shortly after receiving treatment despite allegedly continuing to experience substantial limitations from the injury.  *Id.*, ¶¶ 9-11.  On or about June 2, 2022, Davis attempted to maneuver a lift chair around a fence by splitting the equipment into two pieces; however, the pieces would not fit through the fence's opening, so Davis lifted the pieces over the fence and, in so doing, injured his left shoulder.  *Id.*, ¶¶ 13-14.

Because of his left shoulder injury, Davis submitted a workers' compensation claim and was evaluated by a panel physician who restricted Davis to engage only in light-duty, right-handed work.  *Id.*, ¶¶ 15-16.  Davis notified his supervisor, David Vento, of these restrictions and was informed "that both arms were required for the job . . . and [that] no accommodating work was available." *Id.* ¶¶ 17-18.  He was further instructed not to return to work until all restrictions on the use of his left arm were lifted.  *Id.*, ¶ 18.  On June 7, 2022, Davis again submitted notice of his work restrictions and was terminated the following day, June 8, 2022.  *Id.*, ¶¶ 19-20.

Davis filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on July 19, 2022.  *Id.*, ¶ 2(a).  NHME justified its actions to the EEOC indicating that it had communicated a willingness to accommodate Davis, *id.*, ¶ 14, but terminated him because

---

[1]  For purposes of assessing NHME's Motion to Dismiss, the following facts set forth in Davis' Amended Complaint are accepted as true.

he: failed to adhere to proper lifting techniques, failed to respond to coaching, failed to successfully complete probation, and failed to provide the required medical documentation extending his time off work. *Id.*, ¶ 21. Davis received a Notice of Right to Sue from the EEOC dated February 13, 2023, *id.*, ¶ 2(b), and filed suit on March 7, 2023, within 90 days of receiving the Notice of Right to Sue. *Id.*, ¶ 2(c); ECF No. 1.

## II.    Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed, in whole or in part, for "failure to state a claim upon which relief can be granted." *See* Fed. R. Civ. P. 12(b)(6). In this way, a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *See Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). While a complaint does not need detailed factual allegations to survive a motion to dismiss, a complaint must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (internal citations omitted).

At the motion to dismiss stage, the court does not address whether the plaintiff will be able to prove the facts alleged or will ultimately prevail on the merits but, instead, determines if the claimant is entitled to offer evidence to support the claims. *See id.* at 563 n.8; *see also Maio v. Aetna, Inc.*, 221 F.3d 472, 482 (3d Cir. 2000). As such, the court must accept as true all well-pled factual allegations in the complaint and its attachments and view all reasonable inferences in the

light most favorable to the plaintiff(s). *See U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002); *In re Burlington Coat Factory Securities Litigation*, 114 F.3d 1410, 1426 (3d Cir. 1997). However, the court is not required to accept inferences that are unsupported by factual allegations in the complaint or legal conclusions disguised as factual allegations. *See Twombly*, 550 U.S. at 555; *California Pub. Emp. Ret. Sys. v. The Chubb Corp.*, 394 F.3d 126, 143 (3d Cir. 2004).

When determining the sufficiency of a complaint under the standards established in *Twombly* and *Iqbal*, a court must: (1) "tak[e] note of the elements [the] plaintiff must plead to state a claim," *Iqbal*, 556 U.S. at 675, (2) identify allegations unsupported by facts that, "because they are no more than conclusions, are not entitled to the assumption of truth," *id.* at 679; *see also Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011), and (3) assume the veracity of well-pleaded factual allegations and proceed to "determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. In short, a motion to dismiss should not be granted if a plaintiff alleges facts, which taken as true, would entitle him or her to relief. *See Iqbal*, 281 F.3d at 678; *see generally Twombly*, 550 U.S. at 570.

## III.    Analysis

Davis alleges that NHME failed to accommodate his disability, discharged him because of his disability, discharged him in retaliation for requesting an accommodation, and wrongfully discharged him for applying to receive workers' compensation benefits related to his work injury. ECF No. 13, pp. 3-6. NHME counters that Davis' Amended Complaint does not plausibly allege: (1) that he was actually disabled under the ADA, that he had a record of such an impairment, or that he was regarded as having such an impairment; (2) that he was qualified for the position; (3) that he requested and was denied a reasonable accommodation; or (4) that his disability, his request

4

for a reasonable accommodation, or his filing of a workers' compensation claim was the reason for his termination.  ECF No. 15, pp. 1-2.  Thus, NHME argues that Davis' Amended Complaint is "threadbare[,]" contains "nothing but bald factual allegations and conclusory legal claims[,]" and therefore, should be dismissed with prejudice as it fails to allege "adequate claims." *Id.*, p. 1. The Court will evaluate the sufficiency of Davis' pleadings below.

## A. Americans with Disabilities Act

"The purpose of the ADA is to provide civil rights protections for persons with disabilities." *Ford v. Schering-Plough Corp.*, 145 F.3d 601, 606 (3d Cir. 1998) (citing H.R. Rep. No. 101-485, pt. 3, at 48 (1990) (internal quotation marks omitted)).  Therefore, under the ADA, covered entities are prohibited from "discriminat[ing] against a qualified individual on the basis of disability in regard to job application procedures, the hiring, the advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112 (a).  "To state a claim under the ADA, a plaintiff must demonstrate that: (1) [s/]he is a disabled person within the meaning of the ADA; (2) [s/]he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) [s/]he has suffered an otherwise adverse employment decision as a result of discrimination." *Eshelman v. Patrick Industries, Inc.*, 961 F.3d 242, 245 (3d Cir. 2020) (quoting *Taylor v. Phoenixville School Dist.*, 184 F.3d 296, 306 (3d Cir. 1999).

### 1. Discrimination Claim Under the ADA

#### a. Is Plaintiff a Disabled Person Within the Meaning of the ADA?

An individual is disabled under the ADA if he or she has: "(A) a physical or mental impairment that substantially limits one or more major life activities[;]. . . (B) a record of such an impairment; or (C) . . . [is] regarded as having such an impairment." 42 U.S.C. § 12102 (1).  For an impairment

to be classified as a disability under the ADA, a major life activity must be substantially limited. *See Penchishen v. Stroh Brewery Co.*, 932 F.Supp. 671, 674 (E.D. Pa 1996). "Major life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102 (2). As will be discussed below, Plaintiff does not sufficiently plead that he has a record of, or that he was regarded as having such an impairment, but he has sufficiently pled that he is disabled within the meaning of the ADA, under 42 U.S.C. § 12101 (1)(A), as his impairment substantially limits at least one major life activity.

### i. Did Plaintiff Suffer from an Impairment that Substantially Limited one or More Major Life Events?

To constitute a disability, Davis' impairment must substantially limit a major life activity but need not limit more than one major life activity. *See* 42 U.S.C. § 12102 (1), (4)(C). In his Amended Complaint, Davis sets forth that he is substantially limited in performing certain manual tasks, lifting, and working, because of his left shoulder injury which reduced function in his left arm and shoulder. ECF No. 13, ¶¶ 16, 28. Davis specifically notes that the responsibilities of his former position at HMNE "frequently involved lifting heavy equipment[.]" ECF No. 13, ¶ 7. "When considering a Rule 12(b)(6) motion, we . . . construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Wayne Land & Mineral Grp. LLC v. Delaware River Basin Commission*, 894 F.3d 509, 526–27 (3d Cir. 2018). As such, a reasonable reading of Davis' Amended Complaint provides that due to the reduced function of his left arm and shoulder, which resulted in him being restricted to light-duty, right-handed work, he is substantially limited in

lifting, working, and performing certain manual tasks—which are enumerated major life activities under 42 U.S.C. § 12102 (2).  Thus, Davis has adduced facts to sufficiently plead that he suffers from an impairment that substantially limits one or more major life events.

### ii.   Did Plaintiff have a Record of such a Disabling Impairment?

To establish a record of impairment that would constitute a disability under 42 U.S.C. § 12102 (1)(B), a plaintiff must demonstrate that he or she had a "history of, or had been misclassified as having, an impairment that substantially limited a major life activity" and that the employer relied upon that record when it terminated him or her.  *Parrotta v. PECO Energy Company*, 363 F.Supp.3d 577, 599 (E.D. Pa. 2019) (quoting *Eshelman*, 554 F.3d at 437).  The record must show an impairment that constitutes a disability under the ADA in that it must substantially limit a major life activity.  *See id.*; *see also Tice v. Ctr. Area Transp. Auth.*, 247 F.3d 506, 513 (3d Cir. 2001). A history of an impairment that does not substantially limit a major life activity cannot constitute a record of impairment under 42 U.S.C. § 12102(1) because the individual would not qualify as disabled under the ADA.  *See Tice*, 247 F.3d at 513; *Buskirk v. Apollo Metals*, 116 F.Supp.2d 591, 600 (E.D. Pa. 2000).

Here, Davis injured his shoulder on or about June 2, 2022, and was terminated on June 8, 2022. ECF No. 13, ¶¶ 12, 20.  As Davis does not allege that the June 2 incident aggravated a preexisting shoulder injury but, rather, was the origin of the shoulder injury, the only impairment that Davis alleges he had a record of prior to June 2 includes a lower back injury; this injury occurred on April 26, 2022. *Id.* at ¶ 9, 12-14.  Regarding this injury, Davis sets forth that he received treatment, went back to work shortly thereafter, and was able to complete his tasks, but he continued to have substantial limitations from the injury.  *Id.* at ¶¶ 10-11.  Davis does not allege in his Amended Complaint what, if any, major life activity was substantially limited because of his back injury,

nor how that back injury substantially limited a major life activity.  Additionally, he does not

contend that NHME relied upon the *record* of a disabling impairment—his lower back injury—

when it terminated his employment.  Thus, because Davis has adduced no facts to suggest that his

lower back injury would constitute a disability under the ADA or that NHME relied upon such a

record when it terminated his employment, Davis has failed to adduce facts to sufficiently plead

that he has a record of impairment under 42 U.S.C. §12102 (1)(B).

### iii.  Was Plaintiff Regarded as having a Disabling Impairment?

"An individual meets the requirements of being regarded as having such an impairment if the

individual establishes that he or she has been subjected to an action prohibited under . . . [the

ADA] because of an actual or perceived physical or mental impairment whether or not the

impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102 (3)(A) (internal

quotation marks omitted).   However, an individual may not be regarded as having such an

impairment if the impairment is minor and transitory, with an actual or expected duration of six

months or less.  42 U.S.C. § 12102 (3)(B).  In other words, "[a] plaintiff may be regarded as

disabled if: (1) [s/]he has a physical or mental impairment that does not substantially limit life

activities but is treated by the covered entity as constituting such impairment; (2) [s/]he has a

physical or mental impairment that substantially limits major life activities only as a result of the

attitudes of others toward such impairment; or (3) [s/]he has no such impairment but is treated by

a covered entity as having a substantially limiting impairment" so long as the impairment or

perceived impairment is not minor and transitory.  *Decker v. Alliant Technologies, LLC*, 871

F.Supp.2d 413, 426 (E.D. Pa. 2012) (citing *Taylor v. Pathmark Stores, Inc.*, 177 F.3d 180, 187

(3d Cir. 1999); *see also Eshelman v. Agere Systems Inc.*, 554 F.3d 426, 434 (3d Cir. 2009); *Tice*,

247 F.3d at 514; 42 U.S.C. §12102 (3)(B).  This standard focuses upon the employer's perspective

and requires an employee to show that the employer did not perceive him as simply limited but as disabled within the meaning of the ADA. *See Decker*, 871 F.Supp.2d at 426 (quoting *Wilson v. MVM Inc.*, 475 F.3d 166, 179 (3d Cir. 2007)); *Macfarlan v. Ivy Hill SNF, LLC*, 675 F.3d 266, 275 (3d Cir. 2012); *Lewis v. Pennsylvania*, 609 F.Supp.2d 409, 418 (W.D. Pa. 2009).

Here, Davis fails to adduce facts to sufficiently plead that he was regarded as disabled under the ADA. In his Amended Complaint, Davis sets forth that when he notified his supervisor, David Vento, of the restrictions imposed by the panel physician, he was told "that both arms were required for the job[,] . . . [that] no accommodating work was available," and that he was not to return to work until all restrictions on the use of his left arm were lifted. ECF No. 13, ¶ 17-18. In this representation, Davis has adequately alleged that NHME regarded his ability to lift, work, or to perform certain manual tasks, major life activities, as substantially limited such that he was rendered unable to perform the required functions of the job, but he has also shown that NHME believed this limitation was temporary in that he was instructed to only return to work once all restrictions on the use of his left arm were lifted. *Id.* An individual may be regarded as disabled under the ADA when the impairment is episodic but not if the impairment is transitory. *Compare* 42 U.S.C. § 12102 (3)(B) *with* 42 U.S.C. § 12102 (4)(D). Regardless of NHME's belief that Davis' impairment was temporary, Davis failed to plead any facts indicating that the timeframe of the restrictions imposed upon him because of his left shoulder injury was not transitory but was to exceed six months. *See* 42 U.S.C. § 12102 (3)(B). As such, Davis has failed to adduce facts to sufficiently plead that he was regarded as disabled under the ADA. 42. U.S.C. § 12102 (1)(C).

**b. Is Plaintiff Otherwise Qualified to Perform the Essential Functions of the Job, With or Without Reasonable Accommodations by the Employer?**

The analysis of whether an individual is qualified to perform the essential functions of the job may be divided into two parts: "(1) whether the individual has the requisite skill, experience, education and other job-related requirements of the position . . . and (2) whether the individual with or without reasonable accommodation, can perform the essential functions of that position." *Turner v. Hershey Chocolate U.S.*, 440 F.3d 604, 611 (3d Cir. 2006). The determination of whether the individual is qualified is made at the time of the employment decision, and not at the time of the lawsuit. *See id.*

In his Amended Complaint, Davis conclusively pleads that he was qualified for the Technician Driver position, could perform all essential functions of the position with or without reasonable accommodations, and could perform his physical job duties within his doctor's restrictions. ECF No. 13, ¶ 26, 31. Based upon Davis' pleadings that NHME hired him and that none of the reasons NHME cited for his termination were a lack of qualification, *see id.*, ¶ 21, it may be understood that Davis has implicitly pled the first prong of the analysis—that he possessed the requisite skill, experience, education, and other job-related requirements of the position. Regarding the second prong, however, Davis has not adduced any facts which demonstrate that he could, at the time his employment was terminated following his shoulder injury, perform the essential functions of his position with or without reasonable accommodation. In his only explanation of the job's duties, Davis specifically noted that the job "frequently involved lifting heavy equipment" and involved delivering, setting up, and servicing equipment. *Id.*, ¶ 7. Despite conclusively pleading that he could perform the physical job duties within the panel physician's restrictions, Davis also noted that the panel physician restricted him to "light-duty right-handed work" and that his ability to lift was substantially limited as a result of his left shoulder injury. *Id.*, ¶ 16, 26, 28. Davis offered no facts which would clarify how he was qualified, despite his shoulder injury, to perform the

essential duties of the job without an accommodation or how an accommodation would allow him to perform the essential functions of the job. Thus, Davis has failed to adduce facts to sufficiently plead that he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodation from NHME.

### c. Has Plaintiff Suffered an Otherwise Adverse Employment Decision as a Result of Discrimination?

"An adverse employment action is one which alters the employee's compensation, terms, conditions, or privileges of employment, deprives him or her of employment opportunities or adversely affects his or her status as an employee." *Speer v. Norfolk Southern Ry. Corp.*, 121 Fed.Appx. 475, 477 (3d Cir. 2005). Such an adverse employment decision must be a result of discrimination to state a claim under the ADA. *See Speer*, 121 Fed.Appx. at 478 (granting summary judgment to the defendant as the plaintiff was not released from his various positions because of his alleged disability but instead for cause, including "his lack of seniority[,]" a lack of "the proper CDL endorsement[,]" and because he failed to report for duty).

Here, Davis has adduced facts to sufficiently plead that he experienced an adverse employment decision when he was fired on June 8, 2022, as such action adversely affected his status as an employee. Still, Davis must sufficiently plead that the adverse employment decision was a result of discrimination. Davis has alleged that he informed NHME of his work restrictions on or about June 2, 2022, and again on June 7, 2022, and was informed, before his employment was terminated on June 8, 2022, that "both arms were required for the job[,] . . . [that] no accommodating work was available," and that he was not to return to work until all restrictions on the use of his left arm were lifted. ECF No. 13, ¶ 17-18. By highlighting the temporal proximity as well as NHME's adverse response to the restrictions imposed upon Davis by the panel physician, Davis has adduced

facts to sufficiently plead that his termination was a direct result of communicating his work related restrictions.

However, because Davis has failed to plead more than conclusions as to how he was qualified to perform the essential functions of the job, with or without accommodation, he has failed to sufficiently plead discrimination under the ADA.

### 2.  Failure to Accommodate Claim under the ADA

"A plaintiff bringing an ADA failure-to-accommodate claim must establish: (1) he was disabled and his employer knew it; (2) he requested an accommodation or assistance; (3) his employer did not make a good faith effort to assist; and (4) he could have been reasonably accommodated" but for the employer's lack of good faith. *Capps v. Mondelez Global, LLC*, 847 F.3d 144, 157 (3d Cir. 2017) (quoting *Armstrong v. Burdette Tomlin Memorial Hosp.*, 438 F.3d 240, 246 (3d Cir. 2006)); *see also Colwell v. Rite Aid Corp.*, 602 F.3d 495, 504 (3d Cir. 2010); *Taylor*, 184 F.3d at 319-20; *Reyer v. Saint Francis Country House*, 243 F.Supp.3d 573, 595 (E.D. Pa. 2017).

### a.  Was Plaintiff Disabled and did Defendant Know?

Here, as discussed above, Davis has sufficiently pled that he may qualify as a disabled individual under the ADA based upon the fact that his shoulder injury substantially limited his ability to lift, work, and perform certain manual tasks, major life activities under the ADA. *See* 42 U.S.C. § 12102 (1)(A), (2)(A). Although the method of notification is not delineated, Davis pleads that he notified his supervisor on or about June 2, 2022, and again on June 7, 2022, of the restrictions imposed upon him by the panel physician, ensuring that NHME knew of both the restrictions and the impairment of his left shoulder and arm. Notification of Davis' alleged disability was confirmed when NHME responded to Davis notifying him that "both arms were

required for the job" and that Davis was not to return "until all restrictions on his left-arm use were lifted." ECF No. 13, ¶¶ 17-19. Thus, taking Davis' factual averments as true for purposes of the Motion to Dismiss, Davis has adduced facts to sufficiently plead that he is disabled under the ADA and that NHME knew of his disability.

### b. Did Plaintiff Request an Accommodation or Assistance?

To satisfy the requirement that the plaintiff requested an accommodation or assistance, an employee need not have identified and requested a specific reasonable accommodation but must simply demonstrate that an accommodation for the disability was requested. *See Armstrong*, 438 F.3d at 246, 248. This request may be made either through "direct communication or other appropriate means" so long as the "employee make[s] clear that . . . [he or she] wants assistance for his or her disability." *Conneen v. MBNA America Bank, N.A.*, 334 F.3d 318, 332 (3d Cir. 2003) (quoting *Jones v. United Parcel Serv.*, 214 F.3d 402, 408 (3d Cir. 2000)). "The employer must have enough information to know of 'both the disability and desire for an accommodation' or circumstances must at least be sufficient to cause a reasonable employer to make appropriate inquiries about the possible need for an accommodation." *Colwell*, 602 F.3d at 506 (quoting *Conneen*, 334 F.3d at 332 ).

Davis has adduced facts to sufficiently plead that he requested an accommodation or assistance from NHME regarding the injury to his left shoulder. On or about June 2, 2022, and again on June 7, 2022, Davis notified NHME of his work-related restrictions imposed because of the injury to his left shoulder. ECF No. 13, ¶¶ 17, 19. While it is not clear that Davis specifically requested an accommodation or assistance in these notifications, it is apparent, based upon NHME's response, that Davis provided enough information to inform his supervisor of both his disability and, at least implicitly, of his desire for an accommodation. This is clear from NHME's response to the June

2 notification that "no *accommodating* work was available." *Id.*, ¶ 18 (emphasis added).  Because Davis has provided facts to allege that NHME knew of both his alleged disability and his desire for accommodation, Davis has sufficiently pled that he requested an accommodation or assistance.

### c.  Did Defendant Fail to Make a Good Faith Effort to Assist?

To make a good faith effort to assist an individual who requires an accommodation or assistance, the employer must "engage the employee in the interactive process of finding accommodations," but only "if an employer has adequate notice of an employee's disability, and the employee requests accommodations for the disability, [does] it become . . . the responsibility of the employer to engage" in that process. *Armstrong*, 438 F.3d at 246 (quoting *Taylor*, 184 F.3d at 319) (internal quotation marks omitted).

As stated above, Davis provided adequate notice to NHME that he was disabled and required an accommodation or assistance.  Thus, it became the responsibility of NHME to engage Davis in the interactive process of finding accommodations.  In his Amended Complaint, Davis pleads that NHME responded in four ways to the notifications of his disability and required accommodations.  NHME (1) stated that both arms were required for the job; (2) informed Davis that no accommodating work was available; (3) instructed Davis not to return to work until all restrictions on the use of his left arm were lifted; and (4) terminated Davis' employment.  ECF No. 13, ¶¶ 16-20.  Therefore, in pleading that NHME's response to his requests for accommodation was limited to the above, Davis has adduced facts to sufficiently plead that NHME failed to make a good faith effort to assist him in finding a reasonable accommodation.

### d.  Could Plaintiff have been Reasonably Accommodated but for the Employer's Lack of Good Faith?

Davis conclusively pleads that he could perform his physical job duties within his doctor's restrictions. However, Davis has failed to plead any facts as to what would constitute a reasonable accommodation. Because Davis has not alleged that a reasonable accommodation exists, he cannot be said to have sufficiently pled that NHME's lack of good faith was the inhibiting factor which prevented his accommodation. Thus, Davis has failed to adduce facts to sufficiently plead a prima facie case regarding his claim that NHME failed to accommodate him as required by the ADA.

### 3. Retaliation Claim Under the ADA

Davis alleges that NHME terminated his employment in retaliation for his request of an accommodation, violating the ADA. ECF No. 13, ¶ 38. "To establish a prima facie case of retaliation under the ADA, a plaintiff must show (1) protected employee activity, (2) adverse action by the employer either after or contemporaneous with the employee's protected activity, and (3) a causal connection between the employee's protected activity and the employer's adverse action." *Yanoski v. Silgan White Cap Americas, LLC*, 179 F. Supp.3d 413, 425 (M.D. Pa. 2016); *see also Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 279 (3d Cir. 2000); *Krouse v. American Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997).

It has clearly been established that under the ADA, "[r]equesting an accommodation on account of one's disability is a protected activity." *Schirnhofer v. Premier Comp Solutions, LLC*, 303 F.Supp.3d 353, 374 (W.D. Pa. 2018) (citing *Jackson v. J. Lewis Crozer Library*, 445 Fed.Appx. 533, 536 (3d. Cir. 2011); *Sulima v. Tobyhanna Army Depot*, 602 F.3d 177, 188 (3d Cir. 2010)). While a plaintiff does not need to establish that he or she is a qualified, disabled individual to establish a claim of retaliation under the ADA, *see Krouse*, 126 F.3d at 502, the plaintiff must have requested the accommodation in good faith belief that he or she requires an accommodation.

*See Schirnhofer*, 303 F.Supp.3d at 374 (quoting *Shellenberger v. Summit Bancorp, Inc.*, 318 F.3d 183, 191 (3d Cir. 2003)).

To establish the causal connection between the employee's protected activity and the employer's adverse action, it is essential that the adverse action be taken either after or contemporaneous with the employee's engagement in protected activity. "To establish the requisite causal connection a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." *Oden v. SEPTA*, 137 F.Supp.3d 778, 791 (E.D. Pa. 2015) (quoting *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007)). Unless the timing of events is unusually suggestive of retaliatory animus, "temporal proximity alone will be insufficient to establish the necessary causal connection." *Kieffer v. CPR Restoration & Cleaning Service, LLC*, 200 F.Supp.3d 520, 536 (E.D. Pa. 2016) (quoting *Farrell*, 206 F.3d at 280). Still, other circumstantial evidence aside from an unusually suggestive temporal proximity or ongoing antagonism may be utilized to establish a prima facie case of retaliation. *See Farrell*, 206 F.3d at 280-81 ("Although timing and ongoing antagonism have often been the basis for the causal link, our case law clearly has allowed a plaintiff to substantiate a causal connection for purposes of the prima facie case through other types of circumstantial evidence that support the inference."); *see also Campo v. Mid-Atlantic Packaging Specialties, LLC*, 564 F.Supp.3d 362, 393 (E.D. Pa. 2021).

Here, Davis engaged in a protected activity when he requested an accommodation for his alleged disability. In addition to sufficiently pleading that he is disabled under the ADA, Davis appears to have requested the accommodation with a good faith belief that he requires accommodation as his request was in accordance with the physician's restrictions and was made

after the physician recommended such restrictions. Davis' requested accommodation preceded his termination, and the timeline may be viewed as unusually suggestive of retaliatory animus—Davis submitted notification of the work restrictions imposed upon him by the panel physician for the first time on or about June 2, 2022, was told no accommodating work was available, and after submitting the restrictions a second time, was terminated the following day, June 8, 2022. ECF No. 13, ¶¶ 17-20. While this six-day window may not be conclusive that the timeline is unusually suggestive of retaliatory animus, it does provide factual support sufficient to "raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009) (internal citations omitted). Thus, Davis has sufficiently pled that he was engaged in protected activity, that the adverse employment action occurred after the protected activity, and that a causal connection exists between his protected activity and NHME's adverse action.

### 4. Wrongful Discharge Under Pennsylvania's Workers' Compensation Act

In Pennsylvania, there is generally "no common law cause of action against an employer for termination of an at-will employment relationship." *Clay v. Advanced Computer Applications, Inc.*, 522 Pa. 86, 89 (Pa. 1989) (citing *Geary v. United States Steel Corp.*, 456 Pa. 171, 184-85 (Pa. 1974)). While "[e]xceptions to this rule have been recognized in only the most limited circumstances," such as "where discharges of at-will employees would threaten clear mandates of public policy[,]" *Larochelle v. Wilmac Corp.*, 210 F.Supp.3d 658, 712 (E.D. Pa. 2016), the public policy set forth in the PWCA has led the Pennsylvania Supreme Court to recognize such a limited circumstance when an at-will employee is terminated for filing a workers' compensation claim. *See Shick v. Shirey*, 552 Pa. 590, 603 (Pa. 1998); *Rothrock v. Rothrock Motor Sales, Inc.* 810 A.2d 114, 118 (Pa. Super. Ct. 2002). As such, an employee may not be terminated for exercising his

right to obtain workers' compensation benefits under the PWCA. *See Rothrock v. Rothrock Motor Sales, Inc.* 584 Pa. 297, 305 (Pa. 2002); *Kieffer*, 200 F.Supp.3d at 539.

Although Pennsylvania has recognized a cause of action for the termination of an at-will employee in retaliation for filing a workers' compensation claim, *see Larochelle*, 210 F.Supp.3d at 714 (citing *Shick*, 552 PA. at 604), the Pennsylvania Supreme Court is yet to set forth the elements of a prima facie retaliatory discharge claim. *See Spring v. Sealed Air Corp.*, 483 Fed.Appx. 765, 768 (3d Cir. 2012); *Deily v. Waste Management of Allentown*, 55 Fed.Appx. 605, 608 (3d Cir. 2003); *Kieffer*, 200 F.Supp.3d at 539; *Rothrock*, 584 Pa. at 305 (holding that it is unnecessary to adopt a specific test to adjudicate PWCA claims despite finding the four-prong test utilized by the Pennsylvania Superior Court helpful in deciding the specific case before it). In the absence of such direction, courts have consistently utilized the retaliation claim framework employed in Title VII claims when adjudicating PWCA claims. *Spring*, 483 Fed.Appx. at 768; *Deily*, 55 Fed.Appx. at 608; *Larochelle*, 210 F.Supp.3d at 714; *Kieffer*, 200 F.Supp.3d at 539; *Landmesser v. United Air Lines, Inc.*, 102 F.Supp.2d 273, 277-78 (E.D. Pa. 2000); *Owens v. Lehigh Valley Hosp.*, 103 A.3d 859, 861 (Pa. Commw. Ct. 2014). Prima facie Title VII retaliation claims, just as ADA retaliation claims, require a plaintiff to establish: (1) that [s/]he was engaged in protected activity; (2) [s/]he suffered an adverse employment action either after or contemporaneous with the protected activity; and (3) a causal connection exists between the protected activity and the employer's adverse action. *See Spring*, 483 Fed.Appx. at 768; *Deily*, 55 Fed.Appx. at 608; *Shellenberger*, 318 F.3d at 187; *Kieffer*, 200 F.Supp.3d at 539; *Larochelle*, 210 F.Supp.3d at 714.

Pertinent to PWCA claims, Pennsylvania law recognizes that requesting worker's compensation is a protected activity, *see Kieffer v. CPR Restoration & Cleaning Services, LLC*,

733 Fed.Appx. 632, 639 (3d Cir. 2018).   As explained above regarding retaliation claims under the ADA, it is essential that the adverse action be taken either after or contemporaneous with the employee's engagement in protected activity to establish the causal connection between the employee's protected activity and the employer's adverse action.   In establishing this causal connection "a plaintiff may present a triable issue of causation by relying on temporal proximity or other circumstantial evidence concerning the employer's motivation." *Kieffer*, 200 F.Supp.3d at 540 (citing *Theriault v. Dollar General*, 336 Fed.Appx. 172, 174-75 (3d Cir. 2009)).

Here, Davis sufficiently pleads that he was engaged in protected activity when he submitted a workers' compensation claim following his left shoulder injury. ECF No. 13, ¶ 15.  Regarding the timing of the protected activity and the adverse employment action, Davis pleads that NHME fired him less than a week after he "suffered his second work related injury, reported it and sought workers' compensation benefits." ECF No. 13, ¶¶ 43.  Upon a reasonable reading of Davis' Amended Complaint construed in the light most favorable to him, it may be inferred from Davis' pleadings that he alleges the events occurred in the following timeline: he injured his left shoulder, submitted a workers' compensation claim, was evaluated by a panel physician, communicated the physician-imposed restrictions to his supervisor, and was fired.  While Davis has not included facts such as the specific date he submitted his workers' compensation claim, he has alleged, through a factual timeline, that submission of his workers' compensation claim preceded his termination.  As in the case of his retaliation claim under the ADA, Davis has sufficiently plead that the timeline may be unusually suggestive of retaliatory animus—Davis submitted his workers' compensation claim sometime after he injured his left shoulder and was seen by a panel physician on or about June 2, 2022, and was terminated six days later, on June 8, 2022.  ECF No. 13, ¶¶ 17-20.  While this six-day window may not be conclusive that the timeline is unusually suggestive of retaliatory

animus, it provides factual support sufficient to "raise a reasonable expectation that discovery will reveal evidence of the necessary element[,]" *Fowler*, 578 F.3d at 213 (3d Cir. 2009) (internal citations omitted).

Thus, Davis has adduced enough facts that, upon a reasonable reading of his Amended Complaint, are sufficient to plead a wrongful discharge claim under the PWCA.

## IV.    Conclusion

Davis failed to sufficiently plead each element of the claims in Count I, disability discrimination and failure to accommodate under the ADA, but the Court is not convinced that an amendment would be inequitable or futile and will therefore DISMISS this claim WITHOUT PREJUDICE, *see Phillips v. Cnty. Of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008), GRANTING in part NHME's Motion to Dismiss.  ECF No. 14.  Conversely, because Davis sufficiently pled Count II, retaliation under the ADA, and Count III, wrongful discharge under the PWCA, such that he stated claims that are plausible on their face and allow the Court to draw the reasonable inference that NHME is liable for the misconduct alleged, the Court will DENY NHME's Motion to Dismiss, ECF No. 14, regarding Count II, Count III, and in all other respects.

An appropriate order will follow.

Date: November 21, 2023

Stephanie L. Haines
United States District Judge

cc/ecf:  All counsel of record

20